UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GREGG BOGOSIAN,                          :
          Plaintiff,                     :
                                         :
     v.                                  :     C.A. No. 17-16S
                                         :
RHODE ISLAND AIRPORT CORPORATION         :
(T.F. GREEN AIRPORT); PETER FRAZIER;     :
DAVID A. WOLLIN; REBECCA F. BRIGGS; and  :
ADAM M. RAMOS,                           :
          Defendants.                    :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Since October 23, 2013, Plaintiff Gregg Bogosian has been engaged in bitter litigation –

in a case independent of this more recently filed case – against the Rhode Island Airport

Corporation ("RIAC") and certain of its police officers, arising from a July 2012 incident during

which he was arrested after he parked in a handicapped area reserved by the airport for drop-off

and pick-up and failed to respond when officers asked for his license and registration.[1] Bogosian

v. Rhode Island Airport Corp., C.A. No.14-80ML (D.R.I.) ("Bogosian I").[2] In Bogosian I, Mr.

Bogosian retained and dismissed five attorneys before he continued to press the case *pro se*. In

2015, Judge Lisi granted partial summary judgment against Mr. Bogosian on his primary claims;

the First Circuit eliminated more claims on interlocutory appeal. Based on the First Circuit's

---

[1] When assessing a motion to dismiss, the Court may take judicial notice of matters of public record, such as court filings, without converting the motion to one for summary judgment. See, e.g., Kolbe v. BAC Home Loans Servicing, L.P., 738 F.3d 432, 479 (1st Cir. 2013); Murphy v. Central Falls Det. Facility Corp., No. 14-203 S, 2015 WL 1969178, at *3 n.2 (D.R.I. Apr. 30, 2015).

[2] To avoid confusion, in this report and recommendation, citations to filings in Bogosian I are referred to as "Bogosian I (ECF No. __)." Citations to filings in the present case are referred to without a case reference, simply as ECF No. ___. In further hope of avoiding confusion, some portions of Mr. Bogosian's complaint are set out in paragraph format; those portions are cited by reference to the paragraph number. Other portions are in text format; those are cited by reference to the page number. Compare ECF No. 1-1 ¶ 1, with ECF No. 1-1 at 24.

remand, the District Court recently granted summary judgment against Mr. Bogosian on what little remained. Bogosian I (ECF No. 124). Judgment entered on April 27, 2017, disposing of the case in its entirety. Bogosian I (ECF No. 125).

After his last attorney withdrew from Bogosian I, Mr. Bogosian filed what appears to be a total of five motions for sanctions challenging the litigation tactics used by counsel for the Bogosian I defendants. Bogosian I (ECF Nos. 98, 100, 103, 107, 109, 117).[3] The Bogosian I Court made preliminary findings regarding the four formal sanctions motions, holding that they were lacking in merit because they were based on "unsupported allegations, scurrilous accusations, personal attacks, inappropriate language and what could be perceived as veiled threats." Bogosian I (ECF No. 110). Based on these findings, Mr. Bogosian's Bogosian I sanctions filings resulted in seriatim orders barring him from filing anything other than briefing the matters in issue on remand. Bogosian I (ECF Nos. 110, 121).

On December 30, 2016, acting *pro se*, Mr. Bogosian filed this case in Kent County Superior Court. In it, he names as defendants RIAC and its in-house counsel, Peter Frazier, as well as the three attorneys (David Wollin, Rebecca Briggs and Adam Ramos) (hereinafter, the "Attorneys") who appeared for RIAC and the other defendants in Bogosian I. Stripped of invective, profanity and hyperbole, the complaint's primary theme is the malpractice, disloyalty

---

[3] In Bogosian I, Mr. Bogosian filed four motions formally requesting sanctions. The first is docketed as ECF Nos. 98 and 100. The second, third and fourth are set out in ECF Nos. 103, 107 and 109. What I refer to as the fifth is incorporated in a filing captioned, "Factual Grounds for Summary Judgment and Sanctions for Fraud on the Court." ECF No. 117. This filing appears to be identical to ECF No. 11 filed in Bogosian II on the same day, February 8, 2017. The tenor of the contents of this filing may be illustrated by the following quotation from it:

> Due, but not limited to, the "egregious fraud and negligence" by the Defense of a Federal Protective Order, Plaintiff(s) has been the victim of, but not limited to, global identity theft spanning over 7 billion people worldwide.

ECF No. 11 at 4; Bogosian I (ECF No. 117 at 4). This filing is not labeled as a stand-alone motion in either Bogosian I or this case. However, its contents suggest that it could be considered as a motion for summary judgment based on what Mr. Bogosian contends is sanctionable conduct. To the extent that it is so considered in this case, and if it were referred to me, I would recommend that it be summarily denied.

and wrongdoing of Mr. Bogosian's own attorneys; eight of the twelve pages of "Material Facts" are focused on the conduct of these five attorneys, yet none is named as a defendant. <u>See</u> ECF No. 1-1 ¶¶ 10-75. The balance of the "Facts" assail Mr. Frazier, RIAC's in-house counsel, for attending <u>Bogosian I</u> legal proceedings against RIAC, and the Attorneys for issuing subpoenas and for engaging in the "corrupt and fraudulent litigation tactics" that are the subject of the <u>Bogosian I</u> sanctions motions. To distinguish this case from its progenitor, I refer to it as <u>Bogosian II</u>.

Based on Mr. Bogosian's invocation of federal law (the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO")) in Count Ten, Defendants removed <u>Bogosian II</u> to this Court. Based on Fed. R. Civ. P. 8, 9(b) and 12(b)(6), they now ask the Court to dismiss the complaint with prejudice.

## I.     BACKGROUND

In <u>Bogosian I</u>, on May 8, 2015, Judge Lisi granted summary judgment on Mr. Bogosian's claims of false arrest, malicious prosecution, and wrongful search and seizure. <u>Bogosian I</u> (ECF No. 72). The holding was grounded on the Court's finding that the airport police officers were protected by qualified immunity because they had probable cause to conclude that Mr. Bogosian had violated Rhode Island law when he parked without actively loading or unloading, and refused to provide them with his license and registration. <u>Bogosian I</u> (ECF No. 86 at 5-7). Summary judgment was otherwise denied. <u>Bogosian I</u> (ECF No. 72).

The officers filed an interlocutory appeal to the First Circuit of the denial of summary judgment. On January 4, 2017, judgment was entered in favor of the officers on Mr. Bogosian's claims of intentional and negligent infliction of emotional distress and deprivation of privacy; the appeals court vacated the denial of summary judgment on the claims of assault and battery and

loss of consortium, remanding them for reconsideration in the context of the officers' qualified immunity defense.  Bogosian I (ECF No. 112).  Most recently, on April 27, 2017, the District Court issued the decision granting defendants' second motion for summary judgment on all of Mr. Bogosian's remaining claims based on the finding that the undisputed facts do not support his contention that excessive or objectively unreasonable force was used to effectuate his arrest. Bogosian I (ECF No. 124 at 13, 15).

While the appeal of Bogosian I was pending, proceedings in the District Court were stayed.  June 30, 2015, Text Order.  On December 29, 2015, the Bogosians' most recent attorney was permitted to withdraw.  Bogosian I (ECF No. 94).  Despite the stay, the Bogosians[4] filed the four sanctions motions and the "Factual Grounds for Summary Judgment and Sanctions for Fraud on the Court."  Bogosian I (ECF Nos. 98, 100, 103, 107, 109, 117).  Collectively, the Bogosian I sanctions motions allege that the Bogosian I defendants and their counsel violated a protective order by using depositions in support of summary judgment; violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by serving subpoenas seeking information about Mr. Bogosian's medical and employment history; spoliated evidence by allegedly erasing the arrest video; committed discovery fraud by filing falsified documents, fraudulent pictures and untrue arguments; and otherwise engaged in fraud on the court.

In Bogosian I, the Court "carefully reviewed the parties' submissions" pertaining to sanctions and found that Bogosians' multiple motions were based on *ad hominem* attacks and threats and unsupported allegations.  Bogosian I (ECF No. 110 at 3).  Based on this finding, the Court entered an Order prohibiting further filing "until such time as the appeal has been decided."  Bogosian I (ECF No. 110 at 3).  After the interlocutory appeal was decided and the

---

[4] Plaintiffs in Bogosian I were Mr. Bogosian, his wife and his child.

issues to be considered on remand briefed, the Court extended the ban until "the matter remanded by the Court of Appeals is ruled on." Bogosian I (ECF No. 121).

On December 30, 2016, Bogosian II was filed, just before the First Circuit issued its adverse (to Mr. Bogosian) ruling on the Bogosian I interlocutory appeal. Most of the operative facts in the Bogosian II complaint reference in hyperbolic language the righteousness of the allegations in Bogosian I,[5] with emphasis on the misconduct of Mr. Bogosian's five attorneys. According to the pleading, Mr. Bogosian blames his inability to engage a sixth attorney on "all the Fraud and Corruption from previous counsel." ECF No. 1-1 ¶¶ 10-75.

The claims against Defendants RIAC and Mr. Frazier appear to arise principally from Mr. Frazier's serving RIAC in several capacities[6] and in attending proceedings in Bogosian I in those capacities; the pleading also contains the vague statement that "'RIAC' Defendants intentionally lied under oath."[7] ECF No. 1-1 ¶¶ 77, 79-83, 100, 108-10. Other than blaming RIAC and Mr. Frazier for his lack of success in Bogosian I, the complaint does not explain how Mr. Bogosian was injured by RIAC or Mr. Frazier – instead, it is loaded with conclusory statements yet suffers from a dearth of plausible facts. E.g., ECF No. 1-1 ¶ 112 ("Plaintiffs right to effective assistance of counsel and a fair trial have been unquestionably and absolutely

---

[5] Highlighting that the goal of Bogosian II is to undo his lack of success in Bogosian I, Mr. Bogosian supplemented his pleading with a letter to the Court. ECF No. 5. The letter asks the Court to order that the Defendants must "Cease and Desist" from any future actions regarding [Bogosian I] and retain a new Defense Team," as well as that the Court must "reverse any/all Federal Court rulings in favor of the Defendant(s)" in Bogosian I. ECF No. 5 at 2. In addition to their other "Outrageous" conduct, the letter states that the Bogosian II Defendants violated "a Presidential Executive Order breaching the Plaintiffs' Secret Clearance." Id. at 1, 3.

[6] According to the complaint, Mr. Frazier was RIAC's Interim President, CEO, General Counsel, Senior Vice President Administration, Engineering, Planning and Environmental. ECF No. 1-1 ¶ 108. While the complaint asserts that this is an "intentional conflict of interest" and is "inexcusable," ECF No. 1-1 ¶ 109, it does not explain why or how such a conflict conceivably impacted Mr. Bogosian.

[7] See n.12, infra.

violated by the, but not limited to, hard evidence of fraud and corruption detailed herein against the Defendant(s).").

The factual allegations against the Attorneys are equally conclusory and vague. Echoing the accusations contained in the sanctions motions filed in <u>Bogosian I</u>, Mr. Bogosian asserts that they used litigation tactics (such as the tools of discovery) for the purpose of "Assassination of [Mr. Bogosian's] Character" and "Fraud, Slander, Fraud upon the Court." ECF No. 1-1 ¶¶ 29, 31, 35-36, 84-99, 101-06, 113; <u>e.g.</u>, ECF No. 1-1 ¶¶ 44-45 (repeating sanctions motion claim that Attorneys breached protective order). Yet there are no facts to render the claim plausible. For example, while the complaint dramatically asserts that the protective order breach is one of the "largest breaches of its kind in the history of the Rhode Island Judicial System," and that it "puts [Mr. Bogosian] in 'harm's way on a daily basis,'" it does not explain what the breach consisted of or how it caused injury. ECF No. 1-1 ¶¶ 44-45. And the facts that are expressly stated make no sense. To illustrate, using capital letters, presumably to emphasize his perception of the seriousness of the claim, Mr. Bogosian alleges that the Attorneys "REFUSE to acknowledge or tell the court Plaintiff is a Handicapped Person." ECF 1-1 ¶ 113. Yet the fact that Mr. Bogosian claims to be handicapped was not concealed from the Court; to the contrary, it is pled in the <u>Bogosian I</u> complaint. ECF No. 1-2 ¶ 11.

## II.    STANDARD OF REVIEW

The Court must dismiss a complaint if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The First Circuit applies a "two-step pavane" to determine whether a complaint meets

this plausibility standard.  A.G. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citation omitted).  First, courts must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Then, courts must "determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  A.G., 732 F.3d at 80 (quoting Morales-Cruz, 676 F.3d at 224).  Conclusory statements "presented as an *ipse dixit*, unadorned by any factual assertions that might lend it plausibility," are insufficient to pass the plausibility threshold.  Id. at 80-81.  "When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions."  Id. at 81 (listing cases).

Although *pro se* complaints are "held to a less stringent standard than one drafted by a lawyer" and are thus "to be read . . . with an extra degree of solicitude," a plaintiff's "*pro se* status does not excuse him from complying with procedural rules."  Slay v. Bank of Am. Corp., No. 10-408 ML, 2011 WL 1045629, at *7 (D.R.I. Mar. 9, 2011) (citations and quotations omitted).  Even *pro se* complaints must meet the standards of Fed. R. Civ. P. 8(a)(2) ("short and plain statement of the claim showing that the pleader is entitled to relief") and Fed. R. Civ. P. 9(b) ("party must state with particularity the circumstances constituting fraud or mistake"), as well as the requirements of Iqbal and Twombly.  Id. at *7.

## III.    ANALYSIS

### A.    Legal Viability of the Claims

1.    Count One – "Attorney Malpractice and Breach of (Oath) Contract"

Mr. Bogosian's first count appears to be an attempt to state claims for legal malpractice and breach of contract against his prior attorneys, yet none of them are named as defendants. Rather, Defendants are the opposing parties and their counsel in <u>Bogosian I</u> (RIAC, Mr. Frazier and the Attorneys). Count One utterly fails to state a claim against them because they did not and could not represent Mr. Bogosian; they had no contract with him that could be breached and they could not commit attorney malpractice of which he could be the victim. Therefore, Count One should be dismissed.

However, because Mr. Bogosian is *pro se*, I take the analysis a bit deeper. "[T]he gravamen of an action for attorney malpractice is the negligent breach of a contractual duty" between an attorney and his client. <u>Credit Union Cent. Falls v. Groff</u>, 966 A.2d 1262, 1271 (R.I. 2009). Rhode Island law is long settled that, "[g]enerally, an attorney owes no duty to an adverse party." <u>Id.</u> at 1270-71. Exceptions to this principle arise when an opposing party and its counsel have actively joined in committing fraud or when a nonparty is an intended third-party beneficiary of a contractual arrangement between attorney and client. <u>Id.</u> at 1271-73.

The first of the two exceptions to the ban on malpractice claims against an attorney with whom the claimant lacks an attorney/client relationship – fraud – is not really an exception. Rather, it is an analytical device designed to prevent a lawyer from using the attorney-client relationship as a shield to avoid the consequences of his own wrongdoing. It applies when the attorney has participated actively in the fraudulent conduct of the client; under such circumstances, a lawyer's status as an attorney cannot protect him from liability for engaging in willful and premeditated fraud. <u>Nisenzon v. Sadowski</u>, 689 A.2d 1037, 1046 (R.I. 1997); <u>see</u> <u>Likover v. Sunflower Terrace II, Ltd.</u>, 696 S.W.2d 468, 472 (Tex. App. 1985) ("attorney has no general duty to the opposing party, but he is liable for injuries to third parties when his conduct is

fraudulent or malicious"). Such a claim is grounded in fraud, not in attorney malpractice or breach of contract.

The fraud exception is not applicable here – despite Mr. Bogosian's liberal use of the word "fraud," his complaint is devoid of specific allegations of any false representation made by any of Defendants. See Johnson v. Kosseff, No. WC 2011-0366, 2013 WL 207252, at *10 (R.I. Super. Jan. 11, 2013) (despite use of word "fraud" throughout claims against attorney for opposing party, complaint dismissed due to lack of alleged facts specifying that defendant "made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage"). As Fed. R. Civ. P. 9(b) requires, a complaint ostensibly based on fraud must be dismissed unless the challenged conduct is described with specificity. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp., No. CV 16-046 S, 2016 WL 6462137, at *2 (D.R.I. Nov. 1, 2016) (fraud pleading must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"). Mr. Bogosian's pleading is loaded with conclusory statements, but contains nothing plausible or sufficiently specific to allege fraud by any Defendants. E.g., ECF No. 1-1 ¶ 36 (attorney "continues to commit Fraud Upon the Court with his fraudulent 'Scorched-Earth' litigation tactics"); ECF No. 1-1 ¶ 98 ("fraudulent, illegal and slanderous discovery and litigation tactics"); ECF No. 1-1 ¶ 101 (attorneys "intentionally tried concealing 'every piece of factual evidence against his Defendants'").

The other problem with Mr. Bogosian's fraud claims is that they have already been asserted in Bogosian I by the filing of the sanctions motions. Thus, even if the alleged fraudulent conduct by the Attorneys and RIAC already challenged in the Bogosian I sanctions motions

somehow[8] had been set out as plausible and specific allegations of fraud in <u>Bogosian II</u>, I would recommend that this Court exercise its discretion to dismiss them as duplicative. <u>The Haytian Republic</u>, 154 U.S. 118, 124 (1894) (courts may exercise discretion to dismiss second claim to prevent claim-splitting when one suit "is set up to defeat another"); <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."); <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 139 (2d Cir. 2000) ("plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time"). The rule against claim-splitting exists to allow district courts to manage their docket and dispense with duplicative litigation. <u>Katz v. Gerardi</u>, 655 F.3d 1212, 1218-19 (10th Cir. 2011). When two cases pending in the same federal court are sufficiently similar that a judgment in the first would preclude the relitigation of the issue in the second based on traditional claim preclusion principles, the court may exercise its discretion to dismiss the second. <u>Id.</u> at 1219.

The other exception to the ban on bringing a malpractice claim against someone else's lawyer is equally unavailing in the circumstances of this case. Nothing in Mr. Bogosian's complaint implicates the contractual "third party beneficiary" principle, articulated in <u>Flaherty v. Weinberg</u>, 303 Md. 116, 492 A.2d 618 (1985) and <u>Kirby v. Chester</u>, 174 Ga.App. 881, 331 S.E.2d 915 (1985). As these cases make clear, "[t]he courts adopting this theory require that for a non-client to establish a duty owed by the attorney to the non-client, the latter must allege and prove that the actual intent of the client to benefit the non-client was a direct purpose of the

---

[8] Judge Lisi's quick look at the sanctions motions in <u>Bogosian I</u> resulted in the finding quoted in the text – that they are based on "unsupported allegations, scurrilous accusations, personal attacks, inappropriate language, and what could be perceived as veiled threats." ECF No. 110 at 3. Nothing that Mr. Bogosian has filed in <u>Bogosian II</u> would call this finding into question.

transaction or relationship." See Credit Union Cent. Falls, 966 A.2d at 1271. The facts that Mr. Bogosian was not a client of the Attorneys, was not in privity with a client of the Attorneys, and was not an intended third-party beneficiary are all fatal to his ability to assert the claims in Count One against them. Johnson, 2013 WL 207252, at *10 (allegations of legal malpractice failed because opposing counsel did not owe legal duty to claimants).

Based on the foregoing, I find that Count One fails to state a plausible claim and recommend that it be dismissed.

### 2.    Count Two – "Spoliation"

In Count Two, Mr. Bogosian claims that Defendants spoliated case files and evidence, altered surveillance video and deleted recordings. Rhode Island law does not recognize spoliation as an independent cause of action. Malinou v. Miriam Hosp., 24 A.3d 497, 511 (R.I. 2011) ("in this jurisdiction we have recognized the doctrine of spoliation only as an evidentiary matter, which may warrant a jury instruction, but not as giving rise to an independent cause of action"). Therefore, Count Two fails to state a claim. I recommend that Count Two be dismissed without prejudice in light of the pendency of the claim of spoliation in the sanctions motions in Bogosian I.[9]

### 3.    Count Three – "Defamation and Slander"

In Count Three Mr. Bogosian claims he was defamed and slandered by Defendants in court, subjecting him to contempt. This Count fails in the face of the well-established principle that "libelous matters in pleadings are absolutely privileged when the statements are relevant to the issues of the case, even if the allegations are false and malicious." Pawtucket Credit Union v.

---

[9] To be clear, my recommendation that Count Two, and others as noted, be dismissed without prejudice should not be interpreted as a finding that any of these claims have merit. I do not so find. Rather I recommend that certain counts be dismissed without prejudice so that any ruling in this case may not be deployed to argue that an appeal of the denial of the sanctions motions in Bogosian I is precluded.

LaScola, 693 A.2d 1031, 1032 (R.I. 1997) (supposedly defamatory allegations in complaint privileged because relevant to issues in case). This absolute privilege broadly applies both to third-party subpoenas and to a matter that arises during judicial proceedings generally. Imbler v. Pachtman, 424 U.S. 409, 426 n.23 (1976) (absolute privilege covers any courtroom statement and extends to briefs and pleadings); Steadfast Ins. Co. v. Smx 98, Inc., No. H-06-2736, 2009 WL 890398, at *22 n.8 (S.D. Tex. Mar. 30, 2009) (absolute privilege bars claim of business disparagement based on filing of complaint and issuing subpoenas to third parties in discovery); U.S. ex rel. Vasudeva v. Dutta-Gupta, No. 11-114-ML, 2014 WL 6811506, at *10-11 (D.R.I. Nov. 7, 2014) (absolute privilege bars defamation claim based on statements made during judicial proceedings). Because all of the matter that Mr. Bogosian has labeled as libelous[10] consists of the subpoenas and deposition questions directed to his former employers (ECF No. ¶¶ 85-86, 90), "slanderous discovery and litigation tactics" (ECF No. 1-1 ¶ 98), and the "slanderous language used against Plaintiff in front of a courtroom" (ECF No. 1-1 at 43), Count Three fails to state a claim. I recommend that it be dismissed, again without prejudice because the litigation-based statements challenged as slander may be the subject of the Bogosian I sanctions motions.

      4.      Count Four – "Illegal Litigation Tactics – Scorched-Earth Campaign"

Count Four fails to state a claim because "Illegal Litigation Tactics – Scorched-Earth Campaign" is not a recognized cause of action. Vexatious litigation tactics must be challenged by seeking the protection of the court in the context of the case in which they are committed, such as through a motion for sanctions. See Bonilla v. Volvo Car Corp., 150 F.3d 88, 90 (1st Cir. 1998). No matter how it is labeled, courts consistently refuse to countenance the bringing of

---

[10] Count Three is also deficient in that Mr. Bogosian fails to describe the content of the libel; this deficit is an independent ground to dismiss the defamation claim. Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 750-51 (R.I. 2004) (to state a claim, libel claimant must allege that particular statement or conduct is defamatory).

an independent action based on sanctionable litigation conduct.  <u>See, e.g.</u>, <u>Nolen v. Henderson</u>

<u>Nat. Corp.</u>, 986 F.2d 1428, at *3 (10th Cir. 1993) (Table) (no valid basis for independent cause

of action for claims based on conduct alleged to be sanctionable under Rule 11); <u>Pet Silk, Inc. v.</u>

<u>Jackson</u>, No. H-09-2967, 2010 WL 148145, at *2 (S.D. Tx. Jan. 14, 2010) (no independent cause

of action for vexatious litigation under Rule 11); <u>Wilson v. Bush</u>, No. 5:04CV141 CAR, 2006

WL 692305, at *3 (M.D. Ga. Ma. 15, 2006) ("vexatious litigation statute, 28 U.S.C. § 1927, does

not create an independent cause of action").  Based on the foregoing, I find that Count Four fails

to state a claim; I recommend that it be dismissed without prejudice in light of the sanctions

motions in <u>Bogosian I</u>.

     5.    <u>Count Five – "Conspiracy to Injure a Person in his Trade or Occupation"</u>

Rhode Island does not recognize a cause of action for "Conspiracy to Injure a Person in

his Trade or Occupation."  Further, as with his claims of fraud and defamation, Mr. Bogosian

states his injury in conclusory language but provides no facts from which the Court might

discern whether this claim conceivably is plausible under an alternative legal theory.  The only

concrete allegation is that Mr. Bogosian's former employers were adversely affected by the

experience of being deposed in <u>Bogosian I</u>.  <u>E.g.</u>, ECF No. 1-1 at 44-45 ("past Employers would

not return phone calls for a job after they were . . . deposed . . . .  The harm was horrific, and, but

not limited to, financially devastating to Plaintiff.").  There is nothing actionable about taking a

deposition of a former employer in litigation where a plaintiff has placed his ability to earn in

issue; rather, such conduct is protected by the absolute privilege discussed above.  <u>See</u> <u>Imbler</u>,

424 U.S. at 426 n.23.  Further, if the former employers' depositions were beyond the scope of

discovery pursuant to Fed. R. Civ. P. 26(b)(2) because the information sought was not relevant to

the claims or defenses in <u>Bogosian I</u>, Mr. Bogosian's remedy was to seek a protective order in <u>Bogosian I</u>.

Based on its failure to state a claim, I recommend that Count Five be dismissed without prejudice.

6.     <u>Count Six – "Intentional and Negligent Infliction of Emotional Distress"</u>

Mr. Bogosian's claims for negligent and intentional infliction of emotional distress fail because Rhode Island law restricts such claims to the bystander who either is in the zone of physical danger or who observes a tragic incident involving someone with whom he or she is closely related. <u>Liu v. Striuli</u>, 36 F. Supp. 2d 452, 480 (D.R.I. 1999); <u>see</u> <u>Swerdlick v. Koch</u>, 721 A.2d 849, 862 (R.I. 1998) (conduct must be extreme, outrageous, intentional or in reckless disregard of emotional distress it causes; emotional distress caused must be severe). Medically established physical symptomatology is a mandatory element. <u>Vallinoto v. DiSandro</u>, 688 A.2d 830, 838 (R.I. 1997). Based on these deficits, the First Circuit entered summary judgment in favor of the RIAC officers on Mr. Bogosian's claims of infliction of emotional distress in <u>Bogosian I</u>. <u>Bogosian I</u> (ECF No. 112 at 3). Because the operative pleading alleges nothing that approaches actionable infliction of emotional distress, I recommend that Count Six be dismissed.

7.     <u>Count Seven – "Breach of Fiduciary Duty and Tortious Executive Conduct"</u>

Mr. Bogosian's claim for breach of fiduciary duty fails to state a claim because nothing in his complaint suggests the existence of any fiduciary relationship with any Defendant, which is an essential element of such a cause of action. <u>R.I. Resource Recovery Corp. v. Van Liew Trust Co.</u>, No. PC-10-4503, 2011 WL 1936011, at *7 (R.I. Super. May 13, 2011). The companion claim for "tortious executive conduct" should also be dismissed; Rhode Island does not recognize such a cause of action.

8.　　Count Eight – "Fraud and Fraud Upon the Court"

Under Rhode Island law, fraud is "a false representation intending thereby to induce plaintiff to rely thereon, and that the plaintiff justifiably relied thereon to his or her damage." Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996). Mr. Bogosian's complaint does not specify what is the false representation on which this claim is based, nor has he alleged that he relied on any such representation. Accordingly, Count Eight fails to meet the heightened pleading standard set by Fed. R. Civ. P. 9(b). N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (fraud allegations must be plead with particularity, including "specifying the false statements and by whom they were made but also identifying the basis for inferring scienter."). To state a claim of fraud, a plaintiff must specify "the time, place, and content of an alleged false representation." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (quoting McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980)); Sheet Metal Workers Local No. 20, 2016 WL 6462137, at *2. Mr. Bogosian's complaint includes no details regarding what constitutes the alleged fraud, nor how he relied to his detriment on some alleged fraud.

Mr. Bogosian's related claim for "fraud on the court" fails because it is not recognized as an independent cause of action, except in rare circumstances. Shirokov v. Dunlap, Grubb & Weaver PLLC, No. 10-12043-GAO, 2012 WL 1065578, at * 30 (D. Mass. Mar. 1, 2012) ("Fraud on the court is not a recognized independent cause of action in the First Circuit."); Beaulieu v. Bank of Am., N.A., No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *10 n.5 (D. Me. Sept. 29, 2014) ("fraud on the court is not available as an independent cause of action based on conduct that occurred before a different court"). As the First Circuit has made clear, a claim of fraud of the court may be sustained as an independent action only if the issue raised is "egregious" and

involves "an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving an officer of the court." Roger Edwards LLC v. Fiddes & Sons Ltd., 427 F.3d 129, 133 (1st Cir. 2005). Examples of qualifying conduct include bribery of a judge or the exertion of improper influence on the court by counsel. Greater Omaha Packing Co. Inc. v. Fairbank Reconstruction Corp., No. 2:13-CV-436-GZS, 2014 WL 4723083, at *9-10 (D. Me. Sept. 23, 2014). Such a claim ultimately requires clear and convincing evidence that the fraud occurred. Roger Edwards, 427 F.3d at 135. The mere nondisclosure to the adverse party and to the court of facts pertinent to the controversy does not add up to fraud on the court. Wilson v. Johns-Manville Sales Corp., 873 F.2d 869, 872 (5th Cir. 1989). Hyperbole aside, nothing in Mr. Bogosian's complaint approaches the level of a "grave miscarriage of justice," which is required for a viable independent action asserting a claim of fraud on the court. United States v. Beggerly, 524 U.S. 38, 46-47 (1998).

Based on the foregoing, I recommend that the Court dismiss Count Eight without prejudice.

### 9. Count Nine – "Vexatious Litigation"

Like Mr. Bogosian's claim of "Illegal Litigation Tactics – Scorched-Earth Campaign," his claim alleging that Defendants engaged in "vexatious litigation" fails to state a claim because this is not a recognized cause of action. If vexatious litigation tactics were used in Bogosian I, Mr. Bogosian's remedy is a motion for sanctions or for a protective order in that case. I recommend that Count Nine be dismissed without prejudice.

### 10. Count Ten – "RICO (Civil), Barratry and Conspiracy"

Count Ten alleges that Mr. Bogosian is the victim of violations of RICO, barratry and an unspecified conspiracy. The basis for the claim appears to be the Attorneys' conduct in

defending <u>Bogosian I</u>.  <u>See, e.g.</u>, ECF 1-1 at 51-52 ("Defendant(s) concealed several material aspects of their clients' criminal or otherwise problematic past, . . . were 'overly officious in instigating and encouraging groundless litigation against Plaintiff' and intentionally brought 'repeated and persistent acts of frivolous litigation' . . . [and] took a legitimate lawsuit and tried flipping it against the Plaintiff in an effort to censor, intimidate, and silence Plaintiff by burdening him with the, but not limited to, cost of a legal defense.").  Without explaining how or why, Count Ten asserts that the "illegal litigations tactics are, but not limited to, criminal."  ECF No. 1-1 at 53.

As a fraud claim, Count Ten fails because it does not plead fraud with the particularity required by Fed. R. Civ. P. 9(b), <u>Marcello v. DeSano</u>, No. 05-004 ML, 2006 WL 1582404, at *7 (D.R.I. Mar. 23, 2006).  Mr. Bogosian's civil RICO claim also fails to state a claim because the complaint does not allege the elements required by the statute: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.  <u>Kenda Corp. v. Pot O'Gold Money Leagues, Inc.</u>, 329 F.3d 216, 233 (1st Cir. 2003).  The most glaring deficit is the lack of an allegation of a "pattern of racketeering activity," which requires a plaintiff to plead at least two predicate acts.  To qualify, those acts must amount to a violation of specified federal criminal laws, such as kidnapping, dealing in controlled substances, or violations of mail or wire fraud statutes.  18 U.S.C. § 1961(1); <u>see</u> <u>Efron v. Embassy Suites (P.R.) Inc.</u>, 223 F.3d 12, 15 (1st Cir. 2000).

Mr. Bogosian's complaint alleges neither the existence of an "enterprise" nor does it identify any "predicate acts."  Rather, in vague and conclusory language, it asserts that Defendants "did cooperate jointly and severally in the commission of two (2) or more of the predicate acts," without revealing what those acts might be.  The complaint's only factual allegations relate to the litigation tactics used by the Attorneys in defending <u>Bogosian I</u>, which

do not constitute predicate acts. RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP, 682 F.3d 1043, 1051 n.7 (D.D.C. 2012) (declining to extend civil RICO liability based on an attorney's provision of routine legal services). As one court observed, "we find it extremely difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney)." Handeen v. Lemaire, 112 F.3d 1339, 1349 (8th Cir. 1997). Because Mr. Bogosian's "allegations . . . target [the Attorneys'] services as attorneys, nothing more," his pleading fails to state a viable RICO claim. RSM Prod. Corp., 682 F.3d at 1051. Relatedly, Mr. Bogosian's invocation of "conspiracy" in Count Ten suffers a similar deficit: under Rhode Island law, it is well settled that "conspiracy," standing alone, absent an underlying tort or predicate wrongful act, is not recognized as an independent cause of action. Murphy v. Central Falls Detention Facility Corp., No. 4-203S, 2015 WL 1969178, at *14 n.10 (D.R.I. Apr. 30, 2015).

Count Ten also purports to bring a claim for "barratry" for encouraging groundless litigation. It is far from clear that "barratry" is a viable cause of action under Rhode Island law – "[t]he modern trend among many courts is to abolish [barratry] because they have been supplanted by modern tort actions such as malicious prosecution and abuse of process, as well as the code of professional responsibility for attorneys." Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2002). However, if the Court were to assume that the "barratry" may be brought as an independent claim, it requires a plausible pleading alleging facts sufficient to establish the existence of a continuing practice of helping another prosecute a suit or maintaining a suit in return for a financial interest in the outcome. Id.; Osprey, Inc. v. Cabana Ltd. Pshp., 532 S.E.2d 269, 273 (S.C. 2000) (barratry "is the offense of frequently exciting and stirring up

quarrels and suits between other individuals"). The complaint contains no allegation from which barratry may be inferred.

Based on the foregoing, I recommend that Count Ten be dismissed.

### B. Next Steps

For the foregoing reasons, I recommend that this Court dismiss all counts of Mr. Bogosian's complaint. However, because Mr. Bogosian is *pro se* and it remains conceivable that he has a plausible claim that is well grounded in applicable law, I recommend that the Court first provide him with thirty days from the adoption of this report and recommendation to file an amended complaint. Brown v. Rhode Island, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam). If he fails to do so or if he files a new complaint that is still deficient, I recommend that the case be summarily dismissed. One other caveat: as noted above, I recommend that certain of the Counts (Counts Two, Three, Four, Five, Eight and Nine) be dismissed without prejudice in light of the lack of finality of the sanctions motions filed in Bogosian I.

## IV. EMERGENCY MOTION FOR RULE 60 RELIEF

In light of my recommendation that every Count of Mr. Bogosian's complaint should be dismissed for failure to state a claim, the Court need not linger on his somewhat puzzling filing (ECF No. 13), which is captioned "NON SVB HOMINE SED SVB DEO ET LEGE[11]/Fraud Upon the Court." The contents of this filing appear to be an occasionally profane regurgitation of the reasons for Mr. Bogosian's strongly-felt animus towards the Attorneys.[12] Based on the

---

[11] NON SVB HOMINE SED SVB DEO ET LEGE is a Latin phrase meaning, "not under man but under God and law." This phrase appears over the main entrance of the front of Langdell Hall of the Harvard Law School Library. It is attributed to Sir Edward Coke, who credits it to Bracton (fol.6b, 12 *Coke's Reports* 63) from the conference of James the First and the Judges of England, which resulted in the conclusion that cases were to be decided by the courts and not by the King in person. See http://hls.harvard.edu/library/about-the-library/history-of-the-harvard-law-school-library/quotations-in-the-langdell-reading-room/ (visited May 3, 2017).

[12] The Court observes that, unlike his Bogosian II complaint, which has almost no facts pertaining to the Defendants, the "Emergency/Rule 60" motion has an attached exhibit setting out the alleged fact that two of the RIAC police

partially hand-written reference to "Emergency/Rule 60" on the face-page, the Court has docketed this filing as a motion for relief from judgment brought pursuant to Fed. R. Civ. P. 60. Generously read, one might speculate that Mr. Bogosian is invoking the court's general powers pursuant to Fed. R. Civ. P. 60(d)(1, 3) to reverse the outcome of Bogosian I. This section of the Rule confirms that the court may entertain a motion to relieve a party from a judgment or order even though that motion does not conform to the requirements of Fed. R. Civ. P. 60(a-c). That is, by bringing this Emergency/Rule 60 motion, Bogosian II, Mr. Bogosian is asking the Court to vacate the judgments and orders entered in Bogosian I:

> The original lawsuit 14-080-ML MUST be found in Plaintiff(s) favor on all counts due, but not limited to, the intentional fraud and conspiracy to commit fraud by the Defense and Defendant(s) and the criminal and illegal acts of, but not limited to, concealment of Rhode Island law 31-21-4(a)(15)(b)(2)(4) from the court."

ECF No. 13 at 9.

Mr. Bogosian's problem is that Fed. R. Civ. P. 60(d) is not an affirmative grant of power; rather, it simply preserves whatever power the court had prior to the Rule's adoption. 11 Wright & Miller, Federal Practice and Procedure § 2868 at 555-56 (2012) ("Rule 60: Independent Action for Relief"). As the First Circuit has held, those powers normally may be exercised only under the circumstances described in Fed. R. Civ. P. 60(b), which requires that, "[a] party seeking relief . . . must demonstrate 'at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he

---

officers lied during their depositions in Bogosian I, one by omitting other cases in which he was named and the other by omitting prior employment-based discipline. ECF No. 13-2 at 2. With judgment now entered on the final claims in Bogosian I at summary judgment, it is clear that the credibility of these officers has had no impact on the outcome of the case. Summary judgment was entered against Mr. Bogosian because, when Mr. Bogosian's version of the facts was accepted as true, his claims nevertheless failed as a matter of law. See ECF No. 124 at 14-15 (analyzing Mr. Bogosian's version of events and finding that it established that defendants were entitled to judgment as a matter of law). Thus, if these facts had been included in the Bogosian II complaint, my recommendation would be the same. See Wilson v. Johns-Manville, 873 F.2d at 872 (nondisclosure of facts by attorneys to opposing party or to court is not enough to amount to fraud on court).

has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.'" <u>Fisher v. Kadant, Inc.</u>, 589 F.3d 505, 512 (1st Cir. 2009) (quoting <u>Karak v. Bursaw Oil Corp.</u>, 288 F.3d 15, 19 (1st Cir. 2002)); <u>Greater Omaha Packing Co.</u>, 2014 WL 4723083, at *9. An independent action, that is, a collateral attack on a judgment brought in a separate court action, is available only to "prevent a grave miscarriage of justice"; it may not be used to review and correct an error in a final judgment. <u>Mitchell v. Rees</u>, 651 F.3d 593, 595 (6th Cir. 2011); <u>Smith v. Fitzsimmons</u>, 264 F. Supp. 728, 732 (S.D.N.Y. 1967).

While fraud by the adverse party is recognized as a ground that may present exceptional circumstances sufficient to justify an independent attack on the judgment of another court, a party who has an adequate remedy under Fed. R. Civ. P. 60(b) and has failed to exhaust it, may not bring an independent action. <u>Taft v. Donellan Jerome, Inc.</u>, 407 F.2d 807 (7th Cir. 1969). An independent action in equity alleging fraud on the court in a prior action may not be brought prior to moving to set aside the judgment in the court that originally rendered it. <u>Bob McLemore & Co., Inc. v. Branch Banking & Trust Co.</u>, 54 F. Supp. 2d 554, 563 (W.D.N.C. 1999); <u>see</u> Restatement (Second) of Judgments, § 79 (1983) (equitable relief from judgment will be granted only if adequate relief cannot be obtained by other proceedings). And if the allegations of fraud were presented to the court that entered the judgment, the denial of relief by that court (or by an appellate court on appeal from the judgment of that court) bars a further independent equitable action in another court based on the same theory. <u>Winfield Assocs., Inc. v. Stonecipher</u>, 429 F.2d 1087, 1090 (10th Cir. 1970); <u>Locklin v. Switzer Bros., Inc.</u>, 335 F.2d 331, 332 (7th Cir. 1964). The only exception to this bar is if the subsequent action is filed in order to avert a "grave

miscarriage of justice," such as because the judge was bribed. <u>Beggerly</u>, 524 U.S. at 47; <u>Roger Edwards</u>, 427 F.3d at 133; <u>Greater Omaha Packing Co.</u>, 2014 WL 4723083, at *9-10.

Application of these principles to Mr. Bogosian's Fed. R. Civ. P. 60 motion compels the conclusion that it must be denied. For starters, judgment has just entered in <u>Bogosian I</u>, leaving open the possibility of further motion practice therein (including a Fed. R. Civ. P. 60 motion) or appeals in the future. Because the fraud argument that Mr. Bogosian is trying to make in <u>Bogosian II</u> is still available to him in <u>Bogosian I</u>, his attempt to assert it as an independent action in <u>Bogosian II</u> should not be countenanced. In any event, the finality of the judgment in <u>Bogosian I</u> will toll the death knell of an independent Fed. R. Civ. P. 60 motion brought for reasons that were or could have been asserted in <u>Bogosian I</u>, unless Mr. Bogosian can point to an "egregious" and "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving an officer of the court." <u>Roger Edwards</u>, 427 F.3d at 133; <u>Greater Omaha Packing Co.</u>, 2014 WL 4723083, at *9-10. Nothing in his Emergency/Rule 60 motion suggests anything approaching that standard.

Based on the foregoing, I recommend that the Court deny Mr. Bogosian's Emergency/Rule 60 motion.

## V. CONCLUSION

Based on the foregoing, I recommend that Defendants' motion to dismiss the complaint with prejudice (ECF No. 7) should be granted in part and denied in part, as follows. While I find that the complaint should be dismissed for failure to state a claim, based on his *pro se* status, I recommend that the Court permit Mr. Bogosian to file an amended complaint within thirty days of the adoption of this report and recommendation. <u>Brown</u>, 511 F. App'x at 5. If he fails to do so or if he files a new complaint that is still deficient, I recommend that the case be summarily

dismissed, with the caveat that I recommend that certain of the Counts (Counts Two, Three, Four, Five, Eight and Nine) be dismissed without prejudice in light of the sanctions motions in Bogosian I.  In addition, I recommend that the Court deny Mr. Bogosian's Emergency/Rule 60 motion (ECF No. 13).

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 3, 2017